UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PETER NICHOLAUS, SR.               :
                                   :
        v.                         :    C.A. No. 08-101S
                                   :
INTERNATIONAL LONGSHORE-           :
MEN'S ASSOCIATION, LOCAL           :
# 1329                             :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States District Court

Pending before the Court are Cross-motions for Summary Judgment which have been referred to me for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); LR Civ. 72. Plaintiff, Peter Nicholaus, Sr., moves for partial summary judgment as to liability on Count 1 brought under the federal Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401, et seq. and, if granted, a trial limited to the issue of damages.[1]  (Document No. 13).  Defendant, International Longshoremen's Association, Local 1329 ("ILA, 1329") cross-moves for summary judgment as to all three counts brought against it by Plaintiff.  (Document No. 21).  Although Plaintiff requested oral argument, I have determined that the legal and factual issues are adequately addressed in the briefs, and oral argument is not necessary.

**Facts**

Plaintiff was a long-time member of ILA, 1329 dating back to 1964.  On November 18, 2003, Plaintiff completed a Request for Termination Benefits form and submitted it to the R.I. Shipping Association – International Longshoremen's Association Annuity Fund.  (Document No.

---

[1] Plaintiff's Complaint includes two state law claims pursuant to the Court's supplemental jurisdiction (28 U.S.C. § 1367): Count 2 – Breach of Contract and Count 3 – Conversion. Plaintiff does not address these claims in his Motion, and it is unclear if he is abandoning those claims or if he proposes that they be tried along with the issue of damages if he prevails on his Motion for Partial Summary Judgment as to Count 1, the federal LMRDA claim.

17 at pp. 3-4). Plaintiff requested termination benefits because he was "retiring effective Jan. 1, 2004" and signed the form certifying that "the information on this form is complete and true." Id. Plaintiff requested a lump-sum payout of his annuity, and this request, as well as the waiver of a survivor benefit for his spouse, was confirmed by the notarized signatures of Plaintiff and his wife. Id.

After signing this form and receiving his lump-sum annuity payout in early 2004, Plaintiff continued working as a longshoreman and was one of the more senior employees working out of the Local 1329 Union Hall. In early 2007, there was a change in the leadership of ILA, 1329 and, in March 2007, Plaintiff's status with ILA, 1329 was discussed at an Executive Board meeting. Plaintiff asserts that he was not invited to the meeting or otherwise provided with notice that his status with ILA, 1329 would be addressed.[2]

After the meeting, a Notice was prepared and signed by ILA, 1329's Secretary/Treasurer which reported on the action taken at the Board meeting. The Notice states:

> TO WHOM IT MAY CONCERN:
>
> On Tuesday 3/13/07, the Executive Board Members of Local 1329 met to discuss the retirement of Mr. Peter Nicholaus. Mr. Nicholaus applied for and received his pension on 1/01/04. The Pension Trustees, at that time were never notified of his retirement.
>
> In the past, once a member applies for and starts receiving his pension, that member is considered to have left the craft and no longer retains his Union Membership or seniority status. For more than three years now, Mr. Nicholaus has continued to work as Dock Foreman and other top jobs, displacing other Union Members. The Executive Board Members have agreed, that Mr. Nicholaus is retired

---

[2] There is no indication in the record that the ILA, 1329 Board ever gave Plaintiff an opportunity to be heard before it determined that Plaintiff had retired or voluntarily withdrawn from membership in ILA, 1329. There is also no indication in the record that either ILA, 1329 or the Annuity Fund ever demanded that Plaintiff return his Annuity Fund payout.

>and shall not be allowed to displace any member, effective as of 3/13/07.

(Document No. 17 at p. 5). After the Notice was issued, ILA, 1329 ceased treating Plaintiff as a Union Member and no longer honored his seniority. As a result, Plaintiff was treated as a non-union day laborer and suffered a significant reduction in his hours worked at the docks. Plaintiff did not work enough hours to remain eligible for health insurance, vacation pay or annuity contributions.

**Discussion**

    **A.    Summary Judgment Standard**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is

"genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514-2515, 91 L. Ed. 2d 202 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

### B.   LMRDA Claim

Plaintiff alleges that ILA, 1329 violated the LMRDA when it "expelled or otherwise disciplined [him] effective March 19, 2007" without providing him with due process. In particular, he claims that ILA, 1329 failed to (1) serve him with "written specific charges," (2) give him "a reasonable time to prepare his defense," and (3) afford him "a full and fair hearing." (Document No. 1, ¶¶ 18-20).

The fundamental dispute between the parties is whether or not Plaintiff retired effective January 1, 2004 as he stated in the form requesting a lump-sum payout of his annuity. Plaintiff

contends that "he withdrew the money because he feared the Shipping Association that he thought ran the [Annuity] Fund was having money trouble and he wanted to be sure he got his money. He did not intend to 'retire' or to give up his rights as a member of [ILA, 1329]." (Document No. 13 at p. 4). ILA, 1329 counters that Plaintiff knew he had to retire to withdraw his money from the Annuity Fund and "[t]his is precisely what the plaintiff represented when he signed the Termination of Benefits form on November 18, 2003." (Document No. 19 at p. 5). ILA, 1329 also questions the fairness of allowing Plaintiff to retire, reduce the pension pool by taking a withdrawal and retain his ILA, 1329 seniority and benefits. Id.

The flaw in the summary judgment arguments of both sides is that the issue of whether Plaintiff "retired" as a member of ILA, 1329 is rife with unresolved issues of fact. For instance, ILA, 1329 relies on the Affidavit of Daniel Campbell. Mr. Campbell notarized the 2003 annuity withdrawal form signed by Plaintiff and his wife. Mr. Campbell states that "[b]efore Plaintiff signed...I informed him that there were only three (3) ways by which a person could receive his or her pension money...die, become disabled or leave the industry." (Document No. 20-2 at p. 4). Plaintiff counters by acknowledging his conversation with Mr. Campbell but denying that Mr. Campbell gave him that specific information and stating that he "characterized the conversation differently in his deposition testimony." (Document No. 24 at p. 2).

Under the LMRDA, "[n]o member of any labor organization may be...expelled, or otherwise disciplined...by such organization or by any officer thereof unless such member has been:

(A)     served with written specific charges;

(B)     given a reasonable time to prepare his defense; [and]

(C)     afforded a full and fair hearing.

29 U.S.C. § 411(a)(5). A "member" of a labor organization "includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate procedures consistent with lawful provisions of the constitution and bylaws of such organization." 29 U.S.C. § 402(o).

ILA, 1329 contends that the "simple question" is whether Plaintiff "retired as a member of Local 1329" when he withdrew his money from the Annuity Fund and indicated on the form that he was "retiring." (Document No. 19 at p. 4). ILA, 1329 thus contends that Plaintiff was not "expelled or otherwise disciplined" and that its action "under no circumstances, was directed as retaliation toward or punishment" against Plaintiff. Id. Plaintiff contends that his dealings with the Annuity Fund (a separate entity from ILA, 1329) had no impact on his status as a member of ILA, 1329 and thus he was expelled. (Document No. 13 at p. 12). Plaintiff also notes that the prior leadership of ILA, 1329 apparently agreed with his view because he continued to work for over three years without any action being taken. Id.; see Puma v. Sheet Metal Workers Int'l Ass'n, Local Union No. 137, 862 F. Supp. 1077, 1082 (S.D.N.Y. 1994) ("To now say that petitioner is not a union member and that [the LMRDA] does not apply to him after treating him as one for years, without more, is simply not sufficient at this point to dismiss his claim."). Finally, he claims that he is "the victim of the new leaderships' animosity and it has led them to trample upon his rights." (Document No. 13 at p. 13).

It is undisputed that Plaintiff was not provided with the safeguards outlined in the LMRDA (29 U.S.C. § 411(a)(5)) in connection with the ILA, 1329 Board meeting in 2007 regarding Plaintiff's status with the Union. Thus, the issues are whether Plaintiff was a "member" of ILA,

1329 at that time and thus entitled to such safeguards and, if so, whether Plaintiff was "expelled, or otherwise disciplined." These issues are mixed questions of law and fact which can only be answered by looking at the totality of the circumstances. Neither side has met the burden under Rule 56 of establishing the absence of a genuine issue as to any material fact.

ILA, 1329's focus on the 2003 annuity withdrawal form is simply too narrow. It contends that this information "first surfaced" in 2006. (Document No. 20-2 at p. 1, ¶ 2, Aff. of John Lopes). However, in order to receive his annuity payout, Plaintiff was to submit a form to the R.I. Shipping Association – International Longshoremen's Association Annuity Fund. The Annuity Fund is a Taft-Hartley Multi-employer Health and Welfare Fund regulated by federal law. 29 U.S.C. § 186(c)(5). These funds are jointly administered meaning that "employees and employers are equally represented in the administration of such fund." 29 U.S.C. § 186(c)(5)(B). Thus, there are unresolved issues of fact as to the manner in which Plaintiff's withdrawal form was submitted and processed, the identity of the Fund Trustees at the time, the presence of ILA, 1329 Board Members or Officers on the Annuity Fund's Board of Trustees, and if and when the Trustees had notice of Plaintiff's request for annuity withdrawal. In its March 2007 Notice, ILA, 1329 indicated that "the pension trustees, at that time were never notified of [Plaintiff's] retirement." (Document No. 14 at p. 6). (emphasis added). Viewing the evidence in the light most favorable to Plaintiff (as the Court must in its review of Defendant's Rule 56 Motion), there are factual issues as to the timing of ILA, 1329's knowledge of Plaintiff's annuity withdrawal. In fact, in his deposition, ILA, 1329's Secretary/Treasurer testified as to Plaintiff's close relationship with the former Union President and was asked "but [Plaintiff], he signed the papers, a trustee knew, Donald Lavin knew, the officers at the union at the time knew?" (Bento Dep., pp. 41-43). In response, Mr. Bento stated "yeah, at that

time the officers of the union were all part and parcel; go ahead, Pete [Plaintiff], do what you want. We don't care." Id. He also discussed the importance of the Annuity Fund to ILA, 1329 and stated "if people start dipping in, right down the toilet that money's going. So anybody touches it, we break their finger and send them home." Id. at pp. 44-45.

There is also a factual issue as to whether Plaintiff intended to "retire" from ILA, 1329 in 2003 or rather to mislead[3] the Annuity Fund to obtain a lump-sum payout. As noted above, there is a factual dispute regarding the conversation between Plaintiff and Mr. Campbell at the time he notarized the withdrawal form for Plaintiff. There is also a dispute regarding past practice. In its March 2007 Notice, ILA, 1329 indicated that "in the past, once a member applies for and starts receiving his pension, that member is considered to have left the craft and no longer retains his union membership or seniority status." (Document No. 14 at p. 6). However, Plaintiff testifies in his Affidavit that he was "the first member of Local 1329 to withdraw money from the Annuity Fund." (Document No. 15, ¶ 10).[4] He also notes the absence of any ILA, 1329 rule or regulation providing that "a member's withdrawal of money from the Annuity Fund gives up his membership in the Local."

### C.    State Law Claims

Plaintiff alleges in Count 2 that ILA, 1329 expelled him from the Union and denied him the benefits of retired union members in violation of the terms of the parties' collective bargaining

---

[3] Given the limited nature of the record before the Court, it is an open issue as to whether Plaintiff could properly have been expelled or otherwise disciplined by ILA, 1329 at the time (with the safeguards provided under the LMRDA) for using allegedly false pretenses to withdraw his annuity funds. However, it is irrelevant as there is no indication that ILA, 1329 ever considered or served any such charges on Plaintiff, and it appears that ILA, 1329 relied primarily, if not exclusively, on Plaintiff's purported retirement to dishonor his union membership and seniority.

[4] The Annuity Fund was established in the late 1990s when the ILA, 1329 terminated its "old" defined benefit pension plan and distributed the plan assets to the participants.

agreement, annuity fund rules and/or union rules." (Document No. 1, ¶¶ 26, 27). Neither side has adequately briefed or supported their argument as to Count 2. Plaintiff has moved only as to Count 1 (LMRDA) and does not address Count 2 in either his motion (Document No. 13) or Objection (Document No. 23). ILA, 1329 has moved for summary judgment as to Count 2, but its entire argument consists of three sentences and no citation to any evidence of record. It simply denies the existence of any contract that has been violated and summarily states that "[t]he uncontroverted evidence suggests that once a member of Local 1329 retires, he or she is no longer accorded rights and privileges pursuant to the collective bargaining agreement." (Document No. 19 at p. 6). ILA, 1329 does not, however, identify any such evidence and simply concludes by arguing if Plaintiff "retired," his breach of contract claim should be dismissed.

It is unfortunate that neither side saw fit to adequately brief their positions on Count 2 and permit the Court to assess whether Plaintiff has presented a "trialworthy" breach of contract claim. While Plaintiff's failure to properly respond to a summary judgment argument would generally result in dismissal of such claim as abandoned, ILA, 1329 did not properly support its Motion as to Count 2 in the first instance and premises its argument primarily (if not entirely) on a finding that Plaintiff "retired" which is a disputed fact on this record. Thus, although I have serious doubts about the viability of Count 2 based on the facts and circumstances of this case, I have no choice but to recommend denial of ILA, 1329's unsupported Motion as to Count 2.

In Count 3, Plaintiff alleges conversion. In particular, he claims that from January 1, 2004 through March 18, 2007, "while [Plaintiff] regularly worked as a union member and Local 1329 treated him as a member in good standing of the union and not as a 'retired' member, Local 1329 <u>and</u> the Annuity Fund intentionally and wrongfully withheld funds from his wages and converted

them to their own benefit." (Document No. 1, ¶ 30 – emphasis added). Count 3 suffers from the same briefing deficiencies as Count 2. The only difference is that ILA, 1329 devotes four, rather than three, sentences of its brief to this argument, again without citation to any evidence of record.

In a nutshell, ILA, 1329 seeks to limit Count 3 to a conversion of "pension money" and argues that such pension money goes directly from the employers to the Annuity Fund and it never received any such pension money to which Plaintiff or any other Local member is entitled. The problem with ILA, 1329's argument is that the allegations in Count 3 are not expressly limited to pension money and generally reference "wrongfully withheld funds" by both Local 1329 and the Annuity Fund.[5] While ILA, 1329's position may ultimately be correct, it has not established, for purposes of this Motion, by reference to discovery responses, admissions or other evidence that Count 3 is in fact limited to "pension money" and does not extend to other "withheld funds" such as union dues or assessments. Thus, ILA, 1329 has also not properly supported its Motion as to Count 3, and, again, I have no choice but to recommend denial of such Motion.

**Conclusion**

For the foregoing reasons, I recommend that Plaintiff's Motion for Partial Summary Judgment (Document No. 13) and Defendant's Motion for Summary Judgment (Document No. 21) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the

---

[5] On January 28, 2009, Plaintiff stipulated to dismissal of his claims against the Annuity Fund (Document No. 11) but this did not terminate Count 3 as Plaintiff brought his conversion claim against both "Local 1329 and the Annuity Fund." (Document No. 1, ¶ 30).

District Court and the right to appeal the District Court's decision.  <u>United States v. Valencia-Copete</u>, 792 F.2d 4 (1st Cir. 1990).


   /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 20, 2009